2.  Make available the Online Tools for students enrolled in your courses, on the terms and conditions we establish from time to time, provided that it is feasible for us to provide access without undue expense or commitment of labor or other resources. You may allow access to Online Tools only by individuals who are enrolled in your courses. We have no obligation to permit access to Online Tools by any student with respect to whom you are delinquent in payment of any royalty-service fees or other charges. (§ 6.2 of Franchise Agreement)

3.  Review advertising and promotional materials that you propose to use in the Territory. If we have not objected to the materials within 7 business days after we receive them, you may consider them approved. (§ 6.3(b) and § 7.4 of the Franchise Agreement)

4.  Provide you with all improvements and changes to the Authorized Courses that we circulate generally to other franchisees offering the same courses and services. (§ 12 of Franchise Agreement)

5.  Offer additional training programs as we deem necessary or desirable. TPR has the right to designate additional training programs as mandatory or optional. See below in this Item for details. (§ 4.3 of Franchise Agreement)

We are contractually obligated to perform the foregoing services under the Franchise Agreement. We may offer or perform other services from time to time, even though we have no contractual obligation to do so. We reserve the right to charge fees for services that we provide voluntarily.

**Advertising and Promotion**

***Advertising-Promotion Fee.*** You must pay us monthly an advertising-promotion fee of 2% of your Gross Receipts. We maintain unexpended advertising-promotion fees in a separate bank account (the "Fund"). We also contribute 2% of the Gross Receipts of company-owned offices to the Fund. Franchisees outside of the U.S.A. generally do not contribute to the Fund.

We use the advertising-promotion fees for the development, placement, and distribution of advertising that is designed to promote consumer demand for Live Test Prep courses and services. We have the right to direct all programs supported by the Fund, with the final decision over the creative concepts, the materials, and the media used in the programs and their placement. We may use the Fund for (among other things) preparation of advertising materials in various media; event sponsorship; development and maintenance of web sites; administration of the Fund (including salaries and expenses of our employees who work on behalf of the Fund, collection costs, and other costs); implementation of advertising programs, including direct mail and other media services; employment of advertising and public relations agencies; and conducting market research.

We may use the Fund for advertisements and promotions via print, mail, telephone, radio, television, computer, Internet or any other media. The coverage of the media may be local, regional, or national. The source of the advertising material is our in-house marketing department and/or a national advertising agency.

At the end of each fiscal year, at your request, we will send you a report of the advertising-promotion funds collected and expended during the preceding period. During our last fiscal year, approximately 60% of the expenditures from the Fund were for media placement; 5% were for production; 10% were for SAT marketing; 6% were for LSAT marketing; 9% were for marketing research; and 9% were for administrative expenses. Any advertising-promotion fees not used in the calendar year received will remain in the Fund account for use in the following calendar years. We do not use advertising-promotion fees to market franchises. We have no obligation to spend any minimum amount on advertising in your territory.

We do not have a formal franchisee council that advises us on advertising policies. Other than your payments to the Fund, you do not have to participate in a local or regional advertising cooperative.

***Additional Advertising.*** In addition to contributing to the Fund, you must spend annually for advertising and promotion of your business an amount that is not less than 8% of your annual Gross Receipts. We may request appropriate documentation verifying your expenditures. Administrative costs associated with advertising and promotion efforts (including salaries of employees involved in advertising and marketing) do not count toward your advertising requirement. We must approve any promotional materials or advertising that you develop for use in the Territory before you use or publish them. You must participate in all advertising, marketing, promotions, research, and public relations programs that we designate as mandatory, including reasonable discounting programs to the extent that we are legally permitted to mandate such programs. Discounts given in discounting programs do not count towards your minimum required advertising expenditure.

If you wish to have a website for your Live Test Prep business, it must reside on one or more pages of our website and be accessible only by link from our website. Our current policy is that you may not have or sponsor an independent website for your Live Test Prep business.

## Computer System

You must use a computer system that meets our specifications and links to our headquarters. *Appendix C* to the Franchise Agreement lists our system requirements and network configurations as of the date we issued this disclosure document. Your system must be able to organize information pertaining to your business, allow communication with us via e-mail, and generate and transmit financial data to us. You must maintain a high-speed internet connection to our managed IP network using our designated telecommunications providers. We will have independent access to the data on your computer system, and we will download data regularly. There is no contractual limitation on our right to access this data. We anticipate requiring your live data of record to reside on our servers. If you are connected electronically to our "Yonkers" system (or any successor system that we may establish), inputting all required data into Yonkers will be deemed to satisfy your reporting obligation with respect to student and prospect information.

We have the right to change our hardware and software specifications, including the right to require you to use the same software that we use in company-owned sites to score diagnostic tests. If we notify you of such changes, you must upgrade your computer hardware and software, or permit us to do so; you must bear the cost of these upgrades. There is no contractual limitation on the frequency or cost of upgrades. However, our current policy is that we will not require software or hardware upgrades more frequently than twice a year.

## Book of Standards

You can review the Book of Standards before making a decision whether to sign the Franchise Agreement, but we will not allow you to keep a copy unless you sign.

The Book of Standards is on loan to you as long as you remain a franchisee, but it remains our property. You may not copy it, and you must keep it current by including any updates that we provide. We may elect to convert part or all of the Book of Standards to an electronic format.

## Site Selection

You have sole responsibility for the selection of your office location in your Territory. If we provide any advice or assistance regarding your office location, our assistance does not constitute a representation or guarantee by TPR that your business will be profitable or successful at that location. You must notify TPR of your office location and submit such information concerning the site as we may request. Both your office and your classrooms must present a professional, clean

image and must conform to the interior design, trade dress, appearance, furnishings, and aesthetic standards set forth in the current Book of Standards.

### Time Between Signing The Franchise Agreement and Opening

As noted above, this offering circular is primarily for franchisees who are already operating and who wish to renew their franchise rights. If you are not in this category, we anticipate that the lag between signing the Franchise Agreement and opening your Live Test Prep business will be approximately 8 to 10 weeks.

### Training

If you are an existing franchisee, you do not have to attend training in order to renew your franchise rights. However, we have the right to require that you and your new hires become familiar with the TPR Method (as it pertains to Live Test Prep) and the courses that we authorize you to run, as they evolve over time. Accordingly, we can require that you and designated personnel attend training programs.

If you will open a new Live Test Prep franchise, our current standard training courses are as follows:

| Subject | Instructional Materials | Minimum Number of Hours of Classroom Training (note 1) |
|---|---|---|
| SAT – Verbal | Teacher's Manual, practice tests | 19.5 plus 1 hour of "teach back" per trainee |
| SAT – Math | Teacher's Manual, practice tests | 18 plus 1 hour of "teach back" per trainee |
| GRE | Teacher's Manual, practice tests | 24 plus 1 hour of "teach back" per trainee (note 2) |
| LSAT | Teacher's Manual, practice tests | 24 plus 1 hour of "teach back" per trainee |
| GMAT | Teacher's Manual, practice tests | 24 plus 1 hour of "teach back" per trainee |
| TOEFL | Teacher's Manual, practice tests, and on-line practice tests | 24 plus 1 hour of "teach back" per trainee (note 3) |

### NOTES TO TABLE

(1)   Trainees who are not previously certified in SAT teaching must also attend an "Introduction to The Princeton Review" session (including a Preview).

(2)   We reduce the requirement to 16+1 hours for persons who previously trained in the same SAT category.

(3)   We reduce the requirement to 12+1 hours for persons who previously had TOEFL training.

Our training instructors generally have at least two years of experience with TPR. We schedule training courses on an as-needed basis. We will designate the location for training, but generally it will be conducted at our headquarters in New York. For management training, we will provide instructors and training materials for up to four trainees at no cost to you. The training fee for any additional management trainees after the first four is currently $2,000 per trainee. In addition, you will be responsible for all expenses that your trainees incur in connection with training, including transportation, lodging, meals, wages, and other personal expenses.

Any teachers you hire must be trained in a TPR-certified program by a TPR-certified teacher trainer. Teacher trainers, once certified by us, are not necessarily our employees, but instead act as free

agents whom you can hire directly as needed to instruct and certify your teachers. We occasionally sponsor teacher trainer training programs. We publish our standards and certification procedures for teachers and teacher trainers in the Book of Standards, as modified from time to time. Depending on the number of participants, we may assume some of the costs related to the travel, food, lodging, and wages of the "Uber Trainer" in charge of the teacher training program, but you and any other participating franchisees will be responsible for all additional costs related to the trainees you each sponsor. At the conclusion of each training program, you must provide us with a complete list of attendees, clearly indicating which attendees were and were not certified to teach each specific course.

We will organize additional training programs from time to time as we deem necessary or desirable. We may designate training programs as mandatory or optional. All training programs will be held at location(s) we designate. We will not charge you a fee for mandatory training programs or meetings, but we may charge a fee for (i) optional training; (ii) training that you request; or (iii) registration for meeting attendees in excess of one.

## ITEM 12

## TERRITORY

Your franchise is for a specific geographic area (the "Territory"). We typically define a franchisee's Territory by means of one or more political boundaries. The minimum territory size is one county. If you are an existing franchisee of TPR, your Territory definition will be the same as in your expiring franchise agreement.

While your Franchise Agreement is in effect, we will not establish or operate a Live Test Prep business offering the Authorized Courses and the Authorized Services under the Proprietary Marks and the TPR Method (or license or franchise any other person or entity to do so) at any location within your Territory. Otherwise, however, we may conduct any business activities, under any name, in any geographic area and at any location. For example:

- We have the unrestricted right to publish, market and distribute books, videotapes, software, and media of any kind within or outside of your Territory, under the THE PRINCETON REVIEW name or any other name.

- We have the right to market and engage in the Test Preparation Business, including the delivery of courses in the Territory by any means other than Live Test Prep, such as by "distance learning" or any other interactive teaching system or electronic means not requiring attendance of students at fixed locations.

- We have the right to market and engage in the Admission Services Business, in which we offer higher education institutions and school counselors systems for managing the admission process and admissions counseling and career planning for students.

- We have the right to market and engage in the K-12 Services Business, in which we offer educators and schools customized materials, online services, professional development, and live instruction to assist in assessing student performance and achieving government-mandated standards.

- We have exclusive rights to the exploitation of the Proprietary Marks and the TPR Method through or on the World Wide Web, Internet and other e-commerce channels.

- In addition, if we offer you an optional course program or service for the Live Test Prep business, but you choose not to accept it, we will have the right to offer the course or service in the Territory by any means we deem appropriate.

We have no present plans to operate or franchise a business offering Live Test Prep products and services under a different trademark. As noted above and in Item 1, however, Live Test Prep is only part of our Test Preparation Business. We offer Princeton Review Online courses as well as software and printed materials that we sell through retail channels to students for "do-it-yourself" test preparation. If we so request, you must conduct live review sessions in your Territory for students we enroll in Princeton Review Online courses. We will pay you a reasonable fee per location, per session for each review session, and we will provide all student and teacher materials necessary to deliver the review session. We also operate our Admissions Services Business and our K-12 Services Business, as described above and in Item 1.

Your offices and classrooms must be within the Territory, as defined in your Franchise Agreement. You may operate your business only from the office location(s) within your Territory that we have approved. If you wish to relocate your office, you must give us advance notice, the reasons for the proposed relocation, and any additional information that we request. We will not unreasonably withhold our approval.

There are no geographic restrictions on the students that you, other franchisees, or TPR may serve. Students are free to enroll in courses at the Live Test Prep location of their choice, regardless of their or its location. When prospective students contact us, we may refer them to any one or more Live Test Prep sites, although, in practice, it is our policy to refer prospective students to you if they reside in your Territory. We have no obligation to refer students residing closest to your site to you.

The continuation of your rights under the Franchise Agreement is contingent on your satisfaction of the performance standards set forth in *Appendix D* to the Franchise Agreement. We have the right to terminate your franchise if you do not meet the performance standards and you do not cure the default within 30 days after notice. TPR has the right to modify the performance standards from time to time.

The Franchise Agreement does not provide you with any options, rights of first refusal, or similar rights to acquire additional franchises or territories from us.

## ITEM 13

## TRADEMARKS

The principal marks that you will use as our franchisee are THE PRINCETON REVIEW and the logo shown on the cover of this offering circular. You must operate your Live Test Prep business under the THE PRINCETON REVIEW name. We have used THE PRINCETON REVIEW as our principal service mark since 1982.

On February 7, 2005, we entered into a co-existence agreement with the Trustees of Princeton University regarding the principal marks. Under the co-existence agreement, the University agreed not to oppose or contest our use or registration of these marks anywhere in the world and to provide consent and assistance where necessary to secure registration. In exchange, we agreed to include a specified disclaimer of affiliation with the University in most of our advertising and publications and to instruct our employees and franchisees to use the disclaimer. Other than the agreement with Princeton University, there are no agreements that significantly limit our rights to use the principal marks.

Presently, we do not have a federal registration for the principal marks; accordingly, we do not have certain presumptive legal rights granted by a registration. However, we intend to file new applications for registration of the principal marks in the U.S.A. in the near future.

There are no currently-effective determinations of the Patent and Trademark Office, the Trademark Trial and Appeal Board, the trademark administrator of this state, or any court relating to the principal marks. (The University had filed an opposition in 1991 to our application for registration of

the mark THE PRINCETON REVIEW, but action by the Trademark Trial and Appeal board was suspended and is now superseded by the co-existence agreement.) We know of no infringing uses that could materially affect your use of the principal marks in the U.S.A.

You must use all Proprietary Marks only in the manner we authorize. You may not use any of the Proprietary Marks as part of your corporate or other business name without our prior written consent. You must not contest our rights to any of the Proprietary Marks. If we notify you that we have changed, discontinued, or substituted for any of the Proprietary Marks, you must comply with the changes at your own expense.

You must promptly notify us of any suspected unauthorized use of any Proprietary Marks, any confusingly similar marks, or the TPR Method, but we have no obligation under the Franchise Agreement to take action when you notify us. If we request, you agree to cooperate with us in stopping and/or preventing the unauthorized use. If we take action against such unauthorized use in response to a specific request from you, you agree to share equally in any costs incurred by TPR in that regard. If we take action against such unauthorized use at our own initiative, we will be responsible for any costs incurred. We have the sole right to initiate, direct, and control any litigation or administrative proceeding involving the Proprietary Marks or TPR's proprietary course materials, including any settlement.

If any action or claim is filed or threatened against you alleging that your use of the Proprietary Marks or of TPR's proprietary materials infringes the rights of others, you and TPR will share equally the costs of the defense and any damages awarded or settlements agreed to, unless (i) your use of the Proprietary Marks and materials was not in compliance with the Franchise Agreement; (ii) you failed to give us prompt notice of the action or claim instituted or threatened; or (iii) you failed to reasonably cooperate in the defense. In any of the circumstances in clauses (i)-(iii), you will bear the entire costs of defending the matter.

## ITEM 14

## PATENTS, COPYRIGHTS, AND PROPRIETARY INFORMATION

There are no patents that are relevant to the franchise. However, we claim proprietary rights in our course materials and in the confidential information and trade secrets incorporated in the TPR Method. You must not disclose, nor use for any other business, any confidential information or materials that you obtain, rightfully or otherwise, in connection with or as a result of your operation as a franchisee of TPR. The information and materials subject to this restriction include: our confidential business procedures and processes; trade secrets; educational software programs; training aids; data and written materials; supplies, equipment, material, or instructor lists; student identities, test results, mailing lists, and other customer information; training manuals and teaching techniques; promotion and marketing aids; business forms; specialized accounting procedures; and informational bulletins. In addition, all data that you collect from your students is deemed to be owned by TPR.

We also claim copyright protection for the Book of Standards and our other forms and materials. The copy of the Book of Standards in your possession remains our property. You must not disclose, misuse, record, or reproduce the Book of Standards, in whole or in part, or otherwise make it available to any unauthorized person.

We have registered the copyrights for certain of the course materials that you will use, as well as for the books and materials that we sell through retail channels.

## ITEM 15

**OBLIGATION TO PARTICIPATE IN THE ACTUAL OPERATION OF THE FRANCHISE BUSINESS**

Your Live Test Prep business must always be under the direct, on-site management of the Managing Director named in *Appendix A* to the Franchise Agreement. You may change the Managing Director only with TPR's prior written approval. If the Managing Director leaves for any reason, you must obtain TPR's approval of a new Managing Director within thirty days thereafter. The Managing Director must complete our training program and have authority to act on your behalf in all dealings with TPR.

If the franchisee is a company or other legal entity, each owner must personally guarantee the entity's obligations to us under the Franchise Agreement. Our current form of Personal Guaranty is attached to the sample Franchise Agreement in Exhibit A.

You must obtain agreements from your officers, directors, and employees to maintain confidentiality of the proprietary information and materials described in Item 14 and to comply personally with the covenants not to compete described in Item 17. The agreements must be in a form acceptable to us.

## ITEM 16

**RESTRICTIONS ON WHAT THE FRANCHISEE MAY SELL**

Your franchise is solely for the Live Test Prep business and does not include any other form of Test Preparation Business that we engage in. You may offer only the Authorized Courses and the Authorized Services specified in Appendix A to your Franchise Agreement. We can designate new course programs and services as mandatory or optional. If we develop any new course programs or services and designate them as mandatory, you must accept and implement the program or service in your business. If we offer you an optional course program or service, but you choose not to accept it, we will have the right to offer the course or service in the Territory by any means we deem appropriate. We may charge you a fee for optional new courses or services as described in Item 6. You will not have to accept more than two new mandatory course programs or services in any calendar year.

We impose no restriction on the customers that you may serve.

## ITEM 17

**RENEWAL, TERMINATION, TRANSFER AND DISPUTE RESOLUTION**

The table below lists important provisions of the Franchise Agreement. You should read these provisions in the agreements attached to this offering circular.

| Provision | Section in Franchise Agreement | Summary |
|---|---|---|
| a. Term of the franchise | Section 2.2 | 5 years |

| Provision | Section in Franchise Agreement | Summary |
|---|---|---|
| b. Renewal or extension of the term | Section 16 | Two additional terms of 5 years each. However, if you are signing the Franchise Agreement in connection with the renewal or transfer of an existing franchise, you will have such further renewal periods as you would have had under the prior franchise agreement, subject to the conditions in c. |
| c. Requirements for you to renew or extend | Sections 16.1 through 16.6 | Conditions include written notice; no defaults; execution of our then-current form of Franchise Agreement; payment of a renewal fee; execution of a general release in favor of TPR; and obtaining any government approvals required in the Territory. |
| d. Termination by you | N/A | None. |
| e. Termination by us without cause | N/A | None, but contract terminates without cause when term expires. |
| f. Termination by us with cause | Section 17 | By written notice to you; "cure" periods vary according to type of default. |
| g. "Cause" defined - defaults which can be cured | Sections 17.1.1, 17.1.11, and 17.2 | Failure to submit reports or make payments to us/our affiliates (15-day cure period); breach of any other material obligation of the Franchise Agreement (30-day cure period); and curable cross-defaults in your other agreements with TPR or our affiliates. |
| h. "Cause" defined – defaults which cannot be cured | Sections 17.1.2-17.1.10, 17.1.12 | Bankruptcy/insolvency; unauthorized transfer; inability to perform obligations for more than 30 days; abandonment; jeopardizing the goodwill, proprietary information, or reputation associated with the TPR Method; guilty plea to or conviction of a crime; breach of confidentiality obligations; refusal of inspection or audit; material misrepresentations in franchise application or submission of false/misleading statements or reports; failure to comply with applicable law; repeated defaults; and non-curable cross-defaults in your other agreements with TPR or our affiliates. |
| i. Your obligations on termination/non-renewal | Section 18 | Discontinue operating the frranchised business and use of all proprietary information, materials, and Proprietary Marks; pay all sums due us/our affiliates; offer us the option to buy your equipment/supplies at fair market value; assist in the orderly transition of students; surrender telephone numbers, domain names and e-mail accounts; and maintain confidentiality of all proprietary information and trade secrets.  Also see section r. below. |
| j. Assignment of contract by us | Section 15 | No restriction on our right to assign. |

| Provision | Section in Franchise Agreement | Summary |
|---|---|---|
| k. "Transfer" by you – definition | Section 14.1 | Restrictions apply to any sale, assignment, transfer, conveyance, or encumbrance of the Franchise Agreement, of the assets of the Franchised Business, or of any ownership interest in the franchisee (if the franchisee is not an individual). |
| l. Our approval of transfer by you | Section 14.1 | You must obtain our prior written consent. |
| m. Conditions for our approval of transfer | Section 14.1.1 through 14.1.3 | Pay the transfer fee (see Item 6); transferee must meet our business experience and personal/ financial qualifications, standards for management, organizational structure and ownership of business and understand and accept the obligations and responsibilities of a THE PRINCETON REVIEW franchisee. We may impose other conditions, including: execution by transferee of our then-current form of Franchise Agreement; no defaults; transferor must sign general release. |
| n. Our right of first refusal to acquire your business | Section 14.2 | We have the right to match any offer from a third party. We have 20 days to exercise our right after receiving all information we request about the proposed transfer. We can assign our right of first refusal before or after we exercise it. |
| o. Our option to purchase your equipment | Section 18.3 | We have the right, for 30 days after termination/expiration of your agreement, to buy your equipment/ supplies at then-current fair market value. |
| p. Your death or disability | Section 14.3 | We will permit your interest to transfer on an interim basis to your executor, administrator, or personal representative, and subsequently to your heir/legatee/devisee, subject to conditions. We will have the right, but not the obligation, to operate the business pending disposition of your estate and to charge a reasonable management fee. |
| q. Non-competition covenants during the term of the franchise | Section 13.1 | No interest in any business that offers courses similar to the Authorized Courses or offers services similar to the Authorized Services, or competes with TPR in any other line of business, anywhere in the world. Also applies to your owners if you are a corporation or other legal entity. |
| r. Non-competition covenants after the franchise is terminated or expires | Section 13.2 | For 2 years after termination/expiration/transfer of your agreement, no interest in any business that offers courses similar to the Authorized Courses or offers services similar to the Authorized Services in the Territory. For 1 year after termination/expiration/transfer of your agreement, these restrictions apply not only in the Territory, but also to any business located within 20 miles of any Live Test Prep office operated by us or any of our franchisees. |
| s. Modification of the agreement | Section 21.6 | Amendments must be in writing. |

| Provision | Section in Franchise Agreement | Summary |
|---|---|---|
| t. Integration/merger clause | Section 21.6 | Only the terms of the Franchise Agreement are binding. Any other promises may not be enforceable. |
| u. Dispute resolution by arbitration or mediation | Section 21.11 | None. |
| v. Choice of forum | Section 21.11 | If you initiate the proceeding, judicial actions must be brought in the judicial district of our principal place of business (currently New York). If we initiate the proceeding, we may bring the action in your Territory or where we have our principal place of business. State franchise statutes may supersede this choice of forum. |
| w. Choice of law | Sections 21.10 | Common law of the state of New York applies. State franchise statutes may supersede New York law. |

The following states have statutes that may supersede the Franchise Agreement in your relationship with us, including in the areas of termination and renewal.

    ARKANSAS (Code Sections 4-72-201-210)
    CALIFORNIA (Bus. & Prof. Code Sections 20000-20043)
    CONNECTICUT (Gen. Stat. Section 42-133e et seq.)
    DELAWARE (Code Sections 2551-2556)
    HAWAII (Rev. Stat. Section 482E-1)
    IDAHO (Code Section 29-110)
    ILLINOIS (815 ILCS 705/19 and 705/20)
    INDIANA (Stat. Section 23-2-2.7)
    IOWA (Code Sections 523H.1-523H.17)
    MICHIGAN (Stat. Section 19.854(27)
    MINNESOTA (Stat. Section 80C.14)
    MISSISSIPPI (Code Section 75-24-51)
    MISSOURI (Stat. Section 407.400)
    NEBRASKA (Rev. Stat. Section 87-401)
    NEW JERSEY (Stat. Section 56:10-11)
    NORTH DAKOTA (Cent. Code Section 51-19-01 – 51-19-17)
    SOUTH DAKOTA (Codified Laws Section 37-5A-51)
    VIRGINIA (Code 13.1-557-574 - 13.1-564)
    WASHINGTON (Code Section 19.100.180)
    WISCONSIN (Stat. Section 135.03)

These and other states also have court decisions that may supersede the Franchise Agreement in your relationship with us, including in the areas of termination and renewal.

Exhibit A to this offering circular may include an addendum to the Franchise Agreement to implement contract changes required by your state. If applicable, Exhibit F contains additional disclosures required by your state.

## ITEM 18

## PUBLIC FIGURES

We do not use any public figures to promote our franchise.

## ITEM 19

## EARNINGS CLAIMS

We do not furnish or authorize our representatives to furnish any oral or written information concerning the actual or potential sales, costs, income, or profits of a Live Test Prep business. Actual results vary from location to location, and we cannot estimate the results of any particular franchise.

## ITEM 20

## LIST OF OUTLETS

Exhibit C to this offering circular is a list of all THE PRINCETON REVIEW franchises in the U.S.A. as of December 31, 2004.

Table 1 provides information on THE PRINCETON REVIEW franchises in the U.S.A.

### Table 1

**Franchised Unit Status Summary - By-State**
For Fiscal Years Ending 2004/2003/2002 (note 1)

| State | Transfers | Canceled or Terminated | Not Renewed | Reacquired by Franchisor | Otherwise Left System | Total of Columns (1-5) | Operating at year end |
|---|---|---|---|---|---|---|---|
| California | | | | | | | 3/3/3 |
| Colorado | | | | | | | 1/1/1 |
| Connecticut | | | | | | | 2/2/2 |
| Florida | | | | | | | 2/2/2 |
| Massachusetts | | | | | | | 1/1/1 |
| Michigan | | | | | | | 1/1/1 |
| Missouri | | | | 0/0/1 | | 0/0/1 | 0/0/0 |
| Nevada | | | | | | | 1/1/1 |
| New York | | | | | | | 1/1/1 |
| North Carolina | | | | 0/1/0 | | 0/1/0 | 0/0/1 |
| Ohio | | | | | | | 1/1/1 |

| State | Transfers | Canceled or Terminated | Not Renewed | Reacquired by Franchisor | Otherwise Left System | Total of Columns (1-5) | Operating at year end |
|---|---|---|---|---|---|---|---|
| Pennsylvania | | | | | | | 1/1/1 |
| Rhode Island | | | | | | | 1/1/1 |
| Tennessee | | | | | | | 1/1/1 |
| Puerto Rico | | | | 1/0/0 | | 1/0/0 | 0/1/1 |
| Total | 0/0/0 | 0/0/0 | 0/0/0 | 1/1/1 | 0/0/0 | 1/1/1 | 16/17/18 |

**Notes:**

(1) Our fiscal year ends on December 31st of each year.

Table 2 provides information on company-owned THE PRINCETON REVIEW offices in the U.S.A.

### TABLE 2

### COMPANY-OWNED LIVE TEST PREP OFFICES
### FOR YEARS 2004/2003/2002

| | COMPANY-OWNED OFFICES | | |
|---|---|---|---|
| STATE/ TERRITORY (note 1) | OPENED DURING YEAR | CLOSED DURING YEAR | OPEN AT YEAR END |
| Arizona | 0/0/0 | 0/0/0 | 1/1/1 |
| California | 1/0/0 | 0/0/0 | 3/2/2 |
| DC | 0/0/0 | 0/0/0 | 1/1/1 |
| Georgia | 0/0/0 | 0/0/0 | 1/1/1 |
| Hawaii | 0/0/0 | 1/0/0 | 0/1/1 |
| Illinois | 0/0/0 | 0/0/0 | 1/1/1 |
| Louisiana | 0/0/0 | 0/0/0 | 2/2/2 |
| Maryland | 0/0/1 | 0/0/0 | 1/1/1 |
| Massachusetts | 0/0/0 | 0/0/0 | 1/1/1 |
| Minnesota | 0/0/0 | 0/0/0 | 1/1/1 |
| Missouri | 0/0/1 | 0/0/0 | 1/1/1 |
| New Jersey | 0/0/0 | 0/0/0 | 1/1/1 |
| New York | 0/0/0 | 0/0/0 | 5/5/5 |

|  | COMPANY-OWNED OFFICES | | |
|---|---|---|---|
| STATE/ TERRITORY (note 1) | OPENED DURING YEAR | CLOSED DURING YEAR | OPEN AT YEAR END |
| North Carolina | 0/1/0 | 0/0/0 | 2/2/1 |
| Ohio | 0/0/0 | 0/0/0 | 1/1/1 |
| Pennsylvania | 0/0/0 | 0/0/0 | 1/1/1 |
| Texas | 0/0/0 | 0/0/0 | 5/5/5 |
| Washington | 0/0/0 | 0/0/0 | 1/1/1 |
| Puerto Rico | 1/0/0 | 0/0/0 | 1/0/0 |
| Total | 2/1/2 | 1/0/0 | 30/29/28 |

(1)   States not listed had no company-owned offices during the relevant period.

Table 3 shows, by state, our projected openings of Live Test Prep offices in the U.S.A. during the fiscal year ending on December 31, 2005.

## TABLE 3

## PROJECTED OPENINGS IN 2005

| STATE/ TERRITORY | FRANCHISE AGREEMENT SIGNED BUT BUSINESS NOT YET OPEN | PROJECTED NEW FRANCHISED BUSINESSES TO BE OPENED | PROJECTED COMPANY-OWNED OFFICES TO BE OPENED |
|---|---|---|---|
| Alabama | 0 | 0 | 0 |
| Alaska | 0 | 0 | 0 |
| Arizona | 0 | 0 | 1 |
| Arkansas | 0 | 0 | 0 |
| California | 0 | 0 | 1 |
| Colorado | 0 | 0 | 0 |
| Connecticut | 0 | 0 | 0 |
| DC | 0 | 0 | 0 |
| Delaware | 0 | 0 | 0 |
| Florida | 0 | 0 | 0 |
| Georgia | 0 | 0 | 0 |

| STATE/TERRITORY | FRANCHISE AGREEMENT SIGNED BUT BUSINESS NOT YET OPEN | PROJECTED NEW FRANCHISED BUSINESSES TO BE OPENED | PROJECTED COMPANY-OWNED OFFICES TO BE OPENED |
|---|---|---|---|
| Hawaii | 0 | 0 | 1 |
| Idaho | 0 | 0 | 0 |
| Illinois | 0 | 0 | 0 |
| Indiana | 0 | 0 | 1 |
| Iowa | 0 | 0 | 0 |
| Kansas | 0 | 0 | 0 |
| Kentucky | 0 | 0 | 0 |
| Louisiana | 0 | 0 | 0 |
| Maine | 0 | 0 | 0 |
| Maryland | 0 | 0 | 1 |
| Massachusetts | 0 | 0 | 1 |
| Michigan | 0 | 0 | 0 |
| Minnesota | 0 | 0 | 0 |
| Mississippi | 0 | 0 | 0 |
| Missouri | 0 | 0 | 0 |
| Montana | 0 | 0 | 0 |
| Nebraska | 0 | 0 | 0 |
| Nevada | 0 | 0 | 0 |
| New Hampshire | 0 | 0 | 0 |
| New Jersey | 0 | 0 | 1 |
| New Mexico | 0 | 0 | 0 |
| New York | 0 | 0 | 0 |
| North Carolina | 0 | 0 | 1 |
| North Dakota | 0 | 0 | 0 |
| Ohio | 0 | 0 | 1 |
| Oklahoma | 0 | 0 | 0 |
| Oregon | 0 | 0 | 0 |
| Pennsylvania | 0 | 0 | 0 |
| Rhode Island | 0 | 0 | 0 |
| South Carolina | 0 | 0 | 0 |

| STATE/ TERRITORY | FRANCHISE AGREEMENT SIGNED BUT BUSINESS NOT YET OPEN | PROJECTED NEW FRANCHISED BUSINESSES TO BE OPENED | PROJECTED COMPANY-OWNED OFFICES TO BE OPENED |
|---|---|---|---|
| South Dakota | 0 | 0 | 0 |
| Tennessee | 0 | 0 | 0 |
| Texas | 0 | 0 | 1 |
| Utah | 0 | 0 | 0 |
| Vermont | 0 | 0 | 0 |
| Virginia | 0 | 0 | 1 |
| Washington | 0 | 0 | 0 |
| West Virginia | 0 | 0 | 0 |
| Wisconsin | 0 | 0 | 0 |
| Wyoming | 0 | 0 | 0 |
| Guam | 0 | 1 | 0 |
| Puerto Rico | 0 | 0 | 1 |
| **Total** | **0** | **1** | **12** |

**Franchisees Who Left the System in 2004**

On October 12, 2004, we acquired the assets and operations of our franchisee in Puerto Rico, Karen Kearns. Her last known home address and telephone number are 665 Hernandez Street, San Juan, Puerto Rico 00907, (787) 725-2780. Otherwise, no franchisees in the U.S.A. had an agreement terminated, cancelled, or not renewed, or otherwise voluntarily or involuntarily ceased to do business under a franchise agreement during our fiscal year ended December 31, 2004. We do not have any franchisees who have not communicated with us within ten weeks of the date of this offering circular.

ITEM 21

FINANCIAL STATEMENTS

Exhibit B contains the following financial statements:

1. Audited consolidated financial statements of The Princeton Review, Inc. and subsidiaries as of December 31, 2004 and December 31, 2003. These financial statements were taken from our Form 10-K report dated March 23, 2005, which we filed with the Securities and Exchange Commission.

2. Audited consolidated financial statements of The Princeton Review, Inc. and subsidiaries as of December 31, 2003 and December 31, 2002. These financial statements were taken from our Form 10-K report dated March 11, 2004 filed with the Securities and Exchange Commission.

## ITEM 22

## CONTRACTS

The following sample contracts are included in this offering circular.

    Exhibit A    Franchise Agreement and State-Required Addenda

## ITEM 23

## RECEIPT

    The last two pages of this offering circular are detachable receipt pages.  Please sign and date each of them <u>as of the date you received this offering circular</u>, return one copy to us and retain the other for your records.

# EXHIBIT A

# FRANCHISE AGREEMENT
# AND STATE-REQUIRED ADDENDA



**THE PRINCETON REVIEW FRANCHISE AGREEMENT**

Territory: _____

Franchisee Name: _____

Business Address: _____

Type and nationality of legal entity (if applicable):

_____

Shareholders: _____

_____

Citizenship of Franchisee (or shareholders, if applicable):

_____

## **TABLE OF CONTENTS**

| | | |
|---|---|---:|
| 1. | DEFINITIONS | 1 |
| 2. | GRANT, INITIAL TERM, AND TERRITORIAL RIGHTS | 3 |
| 3. | SITE SELECTION; START-UP | 3 |
| 4. | TRAINING PROGRAMS AND MEETINGS | 4 |
| 5. | FRANCHISEE'S OPERATIONS | 5 |
| 6. | COURSE MATERIALS AND ONLINE COURSE TOOLS | 6 |
| 7. | PROMOTION AND ADVERTISING | 7 |
| 8. | FEES | 9 |
| 9. | REPORTS AND RECORDS | 11 |
| 10. | PROPRIETARY MARKS AND MATERIALS | 13 |
| 11. | CONFIDENTIAL INFORMATION | 15 |
| 12. | IMPROVEMENTS TO THE TPR METHOD | 15 |
| 13. | RESTRICTIONS ON COMPETITION | 15 |
| 14. | LIMITATIONS ON ASSIGNABILITY BY FRANCHISEE | 16 |
| 15. | ASSIGNABILITY BY TPR | 19 |
| 16. | RENEWAL | 19 |
| 17. | TERMINATION | 20 |
| 18. | OBLIGATIONS UPON EXPIRATION OR TERMINATION | 21 |
| 19. | INSURANCE AND INDEMNIFICATION | 22 |
| 20. | STANDARD INTERNATIONAL PROVISIONS | 23 |
| 21. | GENERAL PROVISIONS | 25 |

**APPENDIX A:**   TERMS SPECIFIC TO FRANCHISEE (Territory, Start-Up Deadline, Initial Franchise Fee, Authorized Courses, Authorized Services, Managing Director, and Notice Address)

**APPENDIX B:**   PROPRIETARY MARKS

**APPENDIX C:**   SYSTEM REQUIREMENTS AND NETWORK CONFIGURATIONS

**APPENDIX D:**   STANDARDS OF PERFORMANCE

**PERSONAL GUARANTY**

## THE PRINCETON REVIEW FRANCHISE AGREEMENT

THIS FRANCHISE AGREEMENT (the **"Agreement"**) is between THE PRINCETON REVIEW, INC., a corporation organized under the laws of the State of Delaware, U.S.A. (**"TPR"**), and the individual or legal entity identified on the cover page of this Agreement (**"Franchisee"**).

A.   TPR and its affiliates operate businesses that (i) prepare individuals to take standardized tests (the "Test Preparation Business"); (ii) offer higher education institutions and high school guidance counselors certain systems for managing the admissions process and admissions counseling and career planning for students (the "Admissions Services Business"); and (iii) offer educators and schools customized materials, online services, professional development, and live instruction to assist in assessing student performance and achieving state standards (the "K-12 Services Business"). TPR may change, reduce, or expand the Test Preparation Business, Admissions Services Business, and K-12 Services Business from time to time in TPR's discretion to respond to changes in technology, market conditions, competition, and other legitimate business factors.

B.   As part of the Test Preparation Business, TPR grants franchises to others to operate "Live Test Prep" businesses. "Live Test Prep" means one-on-one tutoring and live, in-person, classroom-based courses to prepare students to take standardized admissions tests for U.S. colleges and graduate schools.

C.   Franchisee wishes to obtain a franchise to operate a Live Test Prep business under the THE PRINCETON REVIEW name and the TPR Method in the Territory defined in this Agreement.

TPR and Franchisee agree as follows:

**1.   DEFINITIONS**

In this Agreement:

**"Authorized Courses"** means the courses approved by TPR to be offered to students by the Franchised Business, as listed from time to time in Appendix A to this Agreement.

**"Authorized Services"** means the non-course services, if any, approved by TPR to be offered to students by the Franchised Business, as listed from time to time in Appendix A to this Agreement.

**"Basket of Goods"** means the set of materials prescribed by TPR for delivery by Franchisee to each student of an Authorized Course. The contents of the Basket of Goods differ for each Authorized Course.

**"Book of Standards"** means the set of mandatory and recommended operating procedures and specifications established by TPR for Live Test Prep, as modified by TPR from time to time.

**"Business Day"** means any day other than a Saturday, Sunday, or U.S. federal holiday.